Good morning. Good morning, Your Honors, and may it please the Court. Erica Oliver, appearing on behalf of the petitioner, Ms. Veronica Rico-Landaverde. May I please reserve two minutes of my time for rebuttal? You bet. Thank you, Your Honor. Now, there is a theme that runs through Ms. Rico's proceedings before the immigration judge. The judge had the duty to act. He failed to do so in three critical respects. First, he didn't assess whether Ms. Rico was sufficiently competent to proceed without safeguards, despite being faced with several indicia of possible... Hang on a second, please. Stop the clock, please. I think we can just turn the sound system off, and if you could just speak up nice and loudly, Ms. Oliver, we'll cut it. Okay. Thank you, Your Honor. But the immigration judge must take some type of affirmative step that is specifically... Well, but tell me what you think that should be. Is he... Well, what specific... If we're going to make a rule here, we've got to give some guidance to the immigration judges. So, what are they supposed to do? What are the three things or five things they should do? Your Honor, the immigration judge should at the very least ask questions that are specifically designed at assessing competence. For example, at Ms. Rico's second hearing, the judge received a copy of the notice of possible membership in the Franco-Gonzalez class faction, and thereafter, Ms. Rico affirmed that she also received a copy of it. He didn't ask her a single question. All he said was, that's exhibit two in the record. Now, that notice informed him that she has been diagnosed with depression. Well, as I read MAM, the inquiries, and this is quote, should, unquote, include an inquiry as, do you know where the hearing's taking place? He asked that. There was no question about that. Nature of the proceedings. There was no question that he asked. He told her about that, and she knew it was a removal proceeding. And the respondent's state of mind. What you're saying is, there was no inquiry as to the respondent's state of mind. That's correct, Your Honor. And there was no inquiry as to any current, he might, unquote, ask about current medication and the purpose and effect of current medication. And there was no questioning about that. That's correct, no questioning about that. Now, my question to you is this. I've read the transcript, and I was impressed with the immigration's judge's thoroughness and and good manners in conducting this. I mean, we often see transcripts where the immigration judge got out of bed the wrong side in that morning and is a little irascible. This immigration judge was just the opposite, I thought. He was very professional. Isn't the impression that the witness makes after five hearings before the immigration judge sufficient to inform the immigration judge of her mental capacity and condition without asking questions such as, how do you feel? Well, Your Honor, no. First, Ms. Rico may have had five separate hearings before the judge, but four of those were calendaring events or a group hearing. The only time that the immigration judge spent a lengthy amount of time in order to observe her was during that final hearing, which was on the merits of her applications for release. Well, Your Honor, the immigration judge sure knew that she has been diagnosed with depression and certainly at the very least he could have requested her medical records. Let me ask you this. There's a difference that seems to be between an indicia of mental illness and an indicia of incompetence. And you said before we're talking about an indicia of incompetence. I don't see where there is evidence that she was incompetent. She may have depression like a lot of people do, but she wasn't going around saying she's the pope or sitting at the table drooling or makes a motion to have L and M expelled from the alphabet or anything. It looked like she, just like many people do, have depression. Why would that be an indicia of incompetence? Your Honor, under matter of MAM it does provide some guidance on what types of things are to be considered indicia of incompetence and that decision explicitly lists evidence in the record that is indicative of a mental illness. Now here the immigration judge knew she had been diagnosed with depression. He had received a copy of the notice of possible membership in the Franco class action. To get back to depression, was she diagnosed with some kind of disabling depression or psychotic depression? Well, Your Honor, we don't know that and part of the reason why we don't know that is because the immigration judge never made the inquiry that he was required to make. When he acknowledged receiving a copy of the Franco-Gonzalez notice, he never asked her when she had been diagnosed. Whether she's currently taking medication, which we know from her letters to the BIA that she is. He didn't even ask her how she was feeling that day. Now, Your Honor, the immigration judge Well, let me just jump in on that because as Judge Silverman said, you can be diagnosed and on antidepressants and still be perfectly competent. I mean, what is the evidence in the record that she wasn't competent to understand or represent herself in this context? Your Honor, what the framework requires is that where indicia of incompetence are present, the judge must make further inquiries It's listed in the decision that evidence of a mental illness is indicative or is an indicia of mental incompetence that is required that triggers the duty to further inquire. He didn't make this further inquiry and that failure to apply the legal framework is a legal error and, accordingly, the court should remandicate the immigration judge so that he can properly make a mental assessment. Suppose we say that he should have done that but it's harmless because when you look at the whole context, she was lucid, she appeared to be conversant with the case, was able to respond in an appropriate way, ask appropriate questions, that sort of thing. What would be the answer to that? Your Honor, it's not a harmless error because we can't say for sure on the record before us that Ms. Rico was, in fact, competent to proceed through her removal proceedings and... Pardon me, I didn't get that because of the noise. Why isn't it a harmless error? Well, it's not a harmless error, Your Honor, because we can't say now that Ms. Rico was, in fact, competent to proceed through the removal proceedings without having made that further inquiry. Why can't we deduce that from the way the hearing was conducted and her behavior there? Well, Your Honor, part of the inquiry is whether or not there's indication of a mental illness. We know that she has been diagnosed with depression but we don't know the extent or the seriousness of that depression because the judge didn't make the inquiry. Well, but counsel, he saw her multiple times and interacted with her multiple times on legal issues. I mean, he had a really good measure of how she was responding to things. Now, he didn't necessarily ask a whole checklist of questions but my question is why did he have to? He's talking with her, he's interacting with her, they're having conversations and he clearly concludes that whether it's a mental health issue or not, she's competent to proceed. Well, Your Honor, for example, during the merits hearing the judge asked her where she had lived prior to coming to the United States. In response, she stated here in Nogales but she wasn't in Nogales so that indicated  where she was but even then he didn't ask her a single question to kind of understand what that response intended and that failure to make any inquiry was a failure to apply the MAM framework so this court should remand her case for proper consideration. Your Honor, this wasn't the judge's only failure to act with respect to his knowledge that she has been diagnosed with depression. The judge also failed to consider whether her depression is an extraordinary circumstance permitting consideration of her asylum application notwithstanding its untimely filing. Now, the judge found that she was statutorily ineligible for applying for asylum because she didn't file within the one-year deadline but under 8 U.S.C. section 1158 A2D an application that's untimely may nevertheless be considered if there are changed or extraordinary circumstances related to the delay in filing that were suffered during the year after entry. Now, 8 C.F.R. section 1208.485 provides guidance on what types of circumstances are to be considered extraordinary but a late asylum claim here would not be meritorious because the only possible persecution would be by Mr. Kota who is not persecuting her on any of the established grounds for asylum persecution.  first, the only legal finding that the immigration judge made with respect to her asylum application was the time bar. So, the minimum time bar that the merits of her application were not but her testimony as to why she was going to be persecuted singled out the only ground was not that she was of particular religion, not that she was of particular sex, not that she had any political opinion, not that she was a member of any particular social group, but that Mr. Kota, an ex- husband, was out to get her. That's a criminal act. We've got dozens of cases that say that being exposed to criminals in Mexico is not a ground for asylum. Your Honor, the BIA recently acknowledged that women who are subject to domestic abuse at the hands of current or former partners can be considered a particular social group that would make a person eligible for asylum. But the merits of her application aren't before this court because the immigration judge considered her statutorily ineligible to file the  application since it was filed after the one-year deadline. Is she eligible for a U visa? She may be, Your Honor. She testified to facts that should have been  Why isn't she applying for a U visa? She hasn't applied for the U visa at this time because of the immigration judge's failure to inform her. Why didn't you tell her she can get a U visa? She has a removal order entered against her that wouldn't have been entered against her had the immigration judge properly informed her. I'm not making my question clear. Why isn't she applying for a U visa? She has a removal order entered against her and that would make the process for applying for the U visa difficult. It doesn't prevent her from applying for the U visa but it certainly is going to be difficult  get a U visa. She would need to get a waiver of inadmissibility from UCIS. The journey starts with one step. If she's eligible, I'm puzzled why she wouldn't apply for one. She would still be considered inadmissible because she has been convicted of a crime of moral interpretation. She would have to get a waiver of inadmissibility. The immigration judge... Why don't you pursue that? If she were to pursue the waiver of inadmissibility through UCIS, she would have to pay the $585 processing fee. She could have gone that waiver through him because there are no equitable factors suggesting there's a plausible showing that the judge would have exercised discretion in her favor. Your Honor, I see I'm coming up on my two-minute mark. May I please briefly conclude and reserve the rest of my time? Thank you. You look like the last guy who was here. They give you all the easy cases. I don't know what this one is so easy. I wouldn't want to get ahead of myself certainly. I think the primary issue here is the mental competency issue. It was the immigration judge's responsibility to ensure that the petitioner received a full and fundamentally fair removal proceedings. That is what she received in this particular case. Didn't MAM set forth some guidelines, not only some guidelines, but some requirements when there was a condition of incompetency as to what the IJ should precisely do, which included inquiry as to the respondent's state of mind. That was not done. I think it was done in the course of examining her. I think the immigration judge has to take the party as they appear before them. In this particular case, the immigration judge saw the petitioner before him and saw nothing to him that would indicate that there were... But he didn't ask any questions like, I see here that you're a member of a class claiming that depression causes incompetency. How do you feel today? Are you taking any medicine? Are you under any doctor's prescription? Didn't ask anything like that. He does note that the Department of Homeland Security had entered an exhibit into the record with respect to whether she was a member of the Franco Gonzalez class. And the immigration judge makes sure she knows about that exhibit. And the immigration judge talks to her about at least examining with her not what is her state of mind, but at least talking to her through this case about how she can proceed in this case, what relief she wants in this case. And at the beginning of the proceedings she tells the immigration judge, do I have to go through this order removal process? Because she understands she's been convicted, she's been in prison, but she tells the immigration judge, do I have to go through this again? And the immigration judge basically tells her, look, this isn't coming. But counsel, that's business as usual in the IJ domain. So here you have an atypical petitioner. You have someone with the extraordinary probably once  experience of being a member of a plaintiff's class directly related to mental health disabilities that affect competency. You have, according to the record, reports from the Arizona Department of Corrections about mental health issues and that the petitioner had thought about harming herself. She's got a terrible criminal background of reckless endangerment and DUIs, which I assume meant, maybe I'm wrong, but she's putting her kids in danger. This is not just, okay, would you like to apply to a visa context. This is something where I think the IJ had some issues with the immigration judge. The immigration judge can see what her response is. What's the further inquiry then? MAM says further inquiry. That's not further inquiry. That's just basic inquiry. You talked about a three-part step or a five-part step. I think the three-part step is detecting indicia of incompetency, then moving into a specific competency hearing, then making a judicial finding with respect to competency. Here, we're at the first step where I think the immigration judge is looking at and figuring out indicia of incompetency and everything that the immigration judge is hearing from this petitioner going forward. In these five hearings, there's nothing in this record that tells him she's incompetent. It's important. But he hasn't asked the right questions. Verbal cues are important but also nonverbal cues are important as well. The behavior responses she provided... But the IJ never put that on the record. We have no guidelines for what he was thinking about competency. He refers to the MAM test talking about a rational understanding of the proceedings. He says on the record from what I see, I have no indication that you're anything other than fully competent to proceed. In this case, the judge takes a party or litigant and nothing told this judge that this individual needed to move to a competency hearing to figure out whether she was competent or not. There's nothing about you that tells me you're competent. We don't have due process necessarily just for this individual. There are statements about depression in the record and statements about harming herself but when the petitioner presented herself to the immigration judge, she responded to the immigration judge. There are at least 200 responses by the petitioner to inquiries or questions by the immigration judge. Nothing in those responses indicated to the immigration judge that he should take it further. There were at least 13 times which the immigration judge asked her if she understood the nature of these proceedings. But if we do that, aren't we just knocking the legs out from MAM? All we're saying at that point is as long as the immigration judge moves forward without any explanation or without asking any questions, as long as the judge moves forward, we should just assume MAM has been met. That can't be the right outcome. I would point out that the immigration judge here is faithful to MAM by referring to the standard rational factual understanding. So this isn't a case where it was just after MAM was issued and the immigration judge gives no pause or gives no statement with respect to the matter of MAM. The immigration judge is aware of the standard, states the standard on the record and goes forward. And I think if you look at this  you have the flexibility to proceed in your cases. At the heart of MAM are statements about being aware of mental competency. You have the flexibility to proceed depending on how the circumstances are presented to you. That's what this court has said in the case as well. That flexibility is one of the hallmarks of MAM. Assessment may be required but the specific outlines of that assessment aren't dictated by MAM. MAM doesn't dictate certain things. It tells the immigration judge to be aware and the immigration judge has to make a determination about competency and this particular immigration judge did not tell the immigration judge or show anything to the immigration judge. How much less could an immigration judge do and still pass MAM? Here the judge didn't do anything to satisfy MAM. Where do we say you haven't satisfied MAM? When the immigration judge isn't faithful to the standard, the judge has to make some indication that I see nothing before me that indicates that you aren't anything other than competent to proceed but as part of the immigration judge's ordinary questioning of the individual going forward, if there's nothing that seems amiss to the immigration judge or any fact finder that tells him, wait a minute, this person is psychotic, this person has given an answer that is completely untoward, there's got to be some behavioral cue or verbal cue to tell that prior fact I need to make        indicates that you aren't anything other than competent to proceed but as part of the immigration judge's ordinary questioning of the individual going forward, if there's nothing that seems amiss to the immigration judge or any fact finder  him, wait a minute,  is psychotic, there's got to   cue to tell him, wait a minute, this person is psychotic, there's got to be some behavioral cue to tell him, wait a minute, this person is psychotic, there's got to be some tab daha yeah huge honor  worked at a big   rights activists and minister cripple 계 and you don't threat to conflict I you you the better governments and and immigration appeal you're right about that at least according to my notes but could she apply for a U visa now what's the story on that she could apply for a U visa now and removal from the United States doesn't preclude an individual from applying from a U visa so she could apply for a U visa the avenue for applying for a U visa though has under the federal government's regulations been dedicated to the Department of Homeland Security and in particular the United States Citizenship and Immigration Services all that the immigration judge and the board could do was tell the individual look U.S.C.I.S. has the authority to deal with U visas we can continue your case or close your case but they are the individuals who take U visas if she is removed can she apply for a U visa yes yes she can apply for a U visa now does she have to pay special fees that I'm not quite sure about she may have to apply for fees but there's nothing that I don't think the immigration judge would do but won't she be barred for 10 years from asking for any relief if she's removed she could be barred but she could still ask U.S.C.I.S. she might have to wait 10 years for a U visa if she's inadmissible and the U.S.C.I.S. says she's inadmissible but even the immigration judge would have to figure out whether she was inadmissible or not in terms of applying for adjustment of status because the U visa says you have the visa you have to have a visa to apply for adjustment of status the immigration judge would still have to examine whether you're inadmissible or not but the immigration judge didn't have that authority in this case because the Secretary of Homeland Security and the Attorney General have said look the responsibility for U visas lies with the U.S.C.I.S. so there's no prejudice in this particular case for the immigration judge not to have raised a U visa with this particular individual and I think as we've pointed out in our briefs she wouldn't be prima facie approvable for a U visa anyway given the repeated nature of her immigration violations but she could have applied and she can apply for a U visa to the U.S.C.I.S. now petitioners in their brief have pointed out the 7th circuit says there's Concord authority to issue a or Concord authority to waive inadmissibility under 212 D 3 A I believe we don't believe that's the law of this court and we don't believe that case was correctly decided that's the LDG case from the 7th circuit even if the 7th circuit is correct that the Attorney General and therefore the board and the Department of Homeland Security with respect to that waiver and admissibility that doesn't mean that the executive branch has to exercise that authority in the way that the petitioners in the 7th circuit would have us apply it the Department of Homeland Security and the Attorney General have said look we've delegated the authority to U visas on the merits to the U.S.C.I.S. that's where it lies immigration judges and the board you can continue a case you can close a case if you think it's worthwhile but the U.S.C.I.S. wouldn't the fact that she's been convicted twice for DUI's which are crimes involving moral turpitude bar her from a waiver of inadmissibility it has the potential to bar as well as the reckless endangerment charge but that is a question on the merits that U.S.C.I.S. would have to deal with that doesn't have to deal with when or how she could apply for a U visa she's not foreclosed from applying for a U visa before U.S.C.I.S. while she was in immigration proceedings before the judge or even now or even later if she's been removed from the United States that avenue was available to her to apply to a U visa so we disagree with the 7th Circuit's decision that there's a concordant authority clearly that authority has been delegated to the Department of Homeland Security that's who has who's in charge of the merits of that of the U visa. Can I just I want to go back to Franco Gonzalez for a moment so the class has been certified in that case right and she is this petitioner is a member of that class is that right? I can't say for sure that she's a member of that class that class has very specific criteria let's assume that she is a member of that class how does that impact these removal if she's a member of that class and that case is still pending can she be removed? She can be she can go back to the board and ask for her proceedings to be reopened to examine the mental competency issue. Under Franco Gonzalez? Under Franco Gonzalez. If she could do separate from this she could go back and ask her to be reopened. Well I think she would have to put this case on hold and if I'm reading petitioners pro bono counsel's papers correctly they don't want to pursue the Franco Gonzalez avenue if I'm reading it correctly. She doesn't have to be in she doesn't have to pursue Franco Gonzalez. She can ask for it now she can go back and ask to reopen the case. Or not as she sees fit. As she sees fit but I think what's important there is this court doesn't have to really decide whether there's an order of removals it does with respect to the CIMT she already has an order of removal she has an order of expedited removal from 1997 so she's already effectively been ordered removed several times in her life. So I think under Franco she can go back to the board and ask for the board to reopen the case with respect to mental competency but I don't think that's what pro bono counsel is interested in. Are there any other questions for Mr. Mack? I guess not. Thank you Mr. Mack. Ms. Oliver you have the last word here. Your honors, first I'd like to address Judge Donato's question regarding the Franco membership. At this time we're not sure whether she is in fact a member of the class action. It's our understanding that class counsel has reached out to the government for its position but we haven't heard a response and it certainly isn't our position that we don't want Ms. Rico to seek relief under the reopening agreement. We would love for her to take full advantage of all opportunities that are available to her. But as class counsel pointed out in the amicus brief the reopening agreement is intended to be relief that is separate and apart from her appeal. So we're opposed to the court predicating its decision on what to do with her appeal. I was just curious. Is it true that the U-Visa argument wasn't exhausted before the agency? Your honor that's correct Ms. Rico didn't argue it herself but this court has said that the failure to inform of a parent eligibility for relief is exempted from normal exhaustion requirements because a person who doesn't know that they're available that they have relief available necessarily won't know that they need to appeal that. What about the argument that her asylum application was untimely? Was that exhausted? Your honor she didn't she never explicitly argued that her mental competence was a mental disability but as this court has stated in cases like R.S.D.V. Holder all that's required is for the argument to be placed at issue. They don't have to use precise terminology in here. Her mental illness was at issue before the immigration judge because the judge I'm not clear on something. At the BIA did she argue that her untimely asylum application should be excused because of her mental incompetence? No your honor but she did submit a letter with her appeal that put her mental issues at issue before the BIA so it was properly before the BIA and they should have made a finding with respect to that. I see that my time is up. Thank you Ms. Oliver. Mr. Mack thank you again. The case just argued is submitted. Ms. Oliver we want to thank you and the law school for taking this pro bono case. Nice work. Thank you.
judges: Donato, Silverman, Bea